IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 12-cv-00960-RBJ

ANGELA RENITA BOYKINS,

    Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER

This matter is before the Court on review of the Commissioner's decision denying plaintiff Angela Boykins' application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Title II and Title XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision by this Court upon the filing of plaintiff's Reply Brief on September 25, 2012. The Court apologizes to the parties and counsel for its delay in addressing the case.

**Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on

substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2007). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**Procedural History**

Ms. Boykins originally applied for benefits in December 2008, alleging disability beginning in August of 2008. Her claims were initially denied in April 2009, after which Ms. Boykins filed a written request for a hearing in May 2009. She appeared and testified at a hearing on July 26, 2010. Following the hearing, the administrative law judge (ALJ) left the record open for Ms. Boykins to file a post-hearing brief. The brief amended the disability onset date to October 2007. In the supplemental brief Ms. Boykins also requested additional time to develop the record as to whether she suffers from a somatoform disorder. The ALJ denied these requests, explaining that "the record as it is currently constituted is sufficient to support a decision." R. 14. The ALJ determined that Ms. Boykins was not disabled under the Social Security Act and denied her claim for benefits.

**Facts**

Angela Boykins was born January 21, 1972 and filed for disability benefits in December 2008. Ms. Boykins filed for benefits alleging that she suffers from post-traumatic stress disorder (PTSD), bipolar disorder, insomnia, colitis, migraines, panic disorder, depression, and asthma. R. 167. In his decision, the ALJ found the following severe impairments: (1) post-traumatic stress disorder (PTSD); (2) bipolar disorder; and (3) anxiety disorder. R. 17. The ALJ held that

although Ms. Boykins alleged multiple physical impairments, none of them are significant enough to be classified as "severe." R. 18.

Mental Impairments

Medical records indicate that Ms. Boykins suffers from a number of mental impairments. First, she has been diagnosed with post-traumatic stress disorder (PTSD) and generalized anxiety. Ms. Boykins' PTSD derives from her history of emotional, physical, and sexual abuse since her childhood. R. 567. Symptoms of Ms. Boykins' disorder include flashbacks, nightmares, hypervigilence, avoidance, and fears. R. 253. She reported that she has suffered from trauma related nightmares since she was 14 and anxiety for 16 years that is worse in crowds and stores. R. 47.

At the hearing, Ms. Boykins explained that she has good days and bad days. On good days she is able to prepare meals, check email, talk with her daughters, wash dishes, and read for five or six hours. R. 54. She claims that on bad days her depression is so severe that she cannot get out of bed, eat, do household chores, put on clothes, bathe, or associate with her husband. R. 48–49. Ms. Boykins alleges that she has three or four bad days each week. R.48.

Ms. Boykins takes a variety of medications to help curb the effects of her mental impairments. At the time of the ALJ's decision, Ms. Boykins reported that she had taken Depakote since 2004, Prasozin for two years, Seroquel for one year, Tegretol for five months, Prevacid for one month, Xanax for 1.5 years, and albuterol since 2004. R. 40. These medications were prescribed for her by Dr. Kobayashi from the Denver Health Medical Center after he diagnosed Ms. Boykins with PTSD, bipolar disorder, and anxiety. R. 560.

Ms. Boykins began seeing a psychologist, Dr. Torness-Smith in August 2006 and continued to see her sporadically through June 2010. Notes from 2006 and 2007 state that Ms.

Boykins did not trust people and was suffering from PTSD and migraines. R. 567. However, by December 2009 and into June of 2010, Dr. Torness-Smith recorded that Ms. Boykins appeared and claimed to be doing "much better" emotionally. R. 554–57. In July 2010 Dr. Torness-Smith completed a report for Ms. Boykins' disability claims where she opined that Ms. Boykins' generalized anxiety disorder and PTSD markedly restrict her daily activities and ability to function in a work environment. R. 552–53.

Ms. Boykins alleges that her traumatic experiences also contribute to frequent insomnia. Dr. Torness-Smith reported several complaints of sleep issues from 2006 to 2010. These reports indicate that on some nights, Ms. Boykins gets an hour or less of sleep. R. 563. By 2010, Ms. Boykins said she continued to have sleep problems and medications did not help, although she experienced a "dramatic decrease in nightmares." R. 554. By March of 2010, Ms. Boykins reported that she was sleeping two to three hours per night. R. 556.

Ms. Boykins was also diagnosed with bipolar disorder and depression. When she was 14, Ms. Boykins attempted suicide and did so again in 2005. R. 564. Dr. Torness-Smith's notes indicate that Ms. Boykins has not thought about suicide since May 2009. In addition to her severe depression, Ms. Boykins reports times where she felt "more of a high" and "racing thoughts." R. 564. She also described a history of thrill seeking behavior such as drinking too much, spending money excessively, and being overly promiscuous. R. 253. These behaviors have stopped since Ms. Boykins began taking medication for bipolar disorder. R.253. In fact, since 2009, Ms. Boykins has reported feeling "more stable" and generally better emotionally. R. 560, 557.

In March 2009, Dr. Kristi Helvig conducted a consultative psychological evaluation. R. 252. Dr. Helvig noted that Ms. Boykins appeared to be "fully alert and oriented to person, place,

time and situation." R. 256. Dr. Helvig opined that Ms. Boykins appeared to have an adequate ability to concentrate, remember and understand simple information. R. 257. She noted that Ms. Boykins' persistence and pace are limited by her depressive symptoms and PTSD only so far as they mildly to moderately interfere with workplace and social abilities. *Id.* Dr. Helvig opined that based on Ms. Boykins' mental health at that time, it would be possible for Ms. Boykins to "perform independently in the competitive workplace for a sustained period of time. However, when in a depressive episode, it seems that her capacity may be impacted." *Id*.

Dr. Ellen Ryan, a non-examining state agency psychiatrist, agreed that Ms. Boykins "does appear to be able to function well enough to work" and that "she should be able to do simple jobs with minimal personal contact and minimal stress due to the migraines." R. 228. Dr. Ryan assigned a Global Assessment of Functioning score of 52 citing minimal symptoms of anxiety, no panic attacks, a history of abuse, reports of PTSD symptoms, and a possible impact on Ms. Boykins' workplace and social abilities when she is depressed. R. 242.

Physical Impairments

During the administrative hearing, Ms. Boykins testified that she has suffered from migraines since she was 14 years old. She said that she gave up custody of her two daughters to their father about 13 years ago due to her migraines. R. 49. She claims her headaches have been at their present severity since 2004 and that they occur one or two times each month and last for three days at a time. R. 42. When Ms. Boykins experiences these migraines, her eyes, neck, and head hurt, and she is unable to tolerate noise or light. *Id.*

Ms. Boykins claims that at least once a month, she visits the emergency room for fluids and morphine or Demerol to manage her headaches. R. 43. Ms. Boykins went to the urgent care

center at Denver Health Medical Center on October 29, 2007 complaining of a headache.  R. 383.  There were no other records relating to visits for migraines.

In treatment notes from Dr. Torness-Smith from August 2006, Ms. Boykins reported severe migraines and difficulty sleeping.  R. 567.  According to Dr. Torness-Smith's notes Ms. Boykins reported fewer migraines beginning in May 2009 and culminating in a "dramatic decrease" in migraines by June 2010.  R. 554, 560.

Ms. Boykins also reported a history of abdominal problems.  She claimed that she experiences abdominal pain on a daily basis for at least one hour per day as a result of her intestines not contracting properly.  R. 45.  She was hospitalized for eight days in November 2008 for severe abdominal pain.  R. 272.  During that time, Ms. Boykins underwent a colonoscopy and exploratory laparotomy.  *Id.*  Although neither test resulted in conclusive findings, the physician noted that the likely cause of Ms. Boykins' pain was from hemorrhagic colitis.  R. 298.

In February 2009 Ms. Boykins was again hospitalized for ten days because of abdominal pain.  R. 482.  Ms. Boykins also stated that she was advised to adhere to a gluten-free diet and that this has helped some.  R. 45.  During this hospitalization, Dr. Ryan Nix provided a psychiatric consultation.  R. 517.  Dr. Nix opined that Ms. Boykins' abdominal pain could be caused by a somatization disorder.  He explained, "patient reports history of physical and sexual abuse as a child and adult and research suggests a high correlation of abuse history with somatization disorder.  However ruling out all other medical conditions should be pursued."  R. 517.  This somatization theory was not raised or discussed again in Ms. Boykins' medical records.

Ms. Boykins also has a history of polycystic ovary syndrome. In 2008, Ms. Boykins visited Denver Health on multiple occasions complaining of lower abdomen pain, cramps, and irregular menses. R. 357, 365, 369. In February 2010, Ms. Boykins had tests taken, but there was no evidence of cysts. R. 445.

Ms. Boykins also has a history of asthma. She claims that she has suffered from the condition since she was a child, and that air conditioning, humidity and allergies exacerbate her symptoms. R. 54. She has used an inhaler to alleviate her asthma attacks since 2004. *Id.* In April and May of 2010, Ms. Boykins went to Denver Health Medical Center because of an ongoing cough, which was attributed to her history of asthma. R. 408, 418. There are no further medical reports regarding this condition.

Finally, Ms. Boykins reported that she experiences sciatic, knee, hand and hip pain. She alleges that the sciatic pain began between 2001 and 2003 after injuring her back at work and the pain occurs once a week. R. 52–53. In 2009, Dr. Sutton referred Ms. Boykins to rehabilitation services because of her back pain. The physical therapist showed Ms. Boykins several exercises for her to try and referred her to recreational facilities where Ms. Boykins could continue to rehabilitate and strengthen her back. R. 465. Her knee pain was present for four to five months before her hearing with the ALJ in July 2010. In her disability report, Ms. Boykins also alleges that she suffers from hip pain and that she had begun experiencing pain in her left hand. R. 197, 56. Ms. Boykins' medical records show one visit for knee, hip, and shoulder pain in August 2009. R. 470. She indicated that she was unable to take pain medications for these injuries because she is allergic to most pain medications. R. 50.

ALJ's Opinion

In his opinion, the ALJ applied the five step analysis mandated by the social security regulations to determine whether Ms. Boykins is disabled. At step one the ALJ found that Ms. Boykins has not engaged in substantial gainful activity since October 29, 2007, the amended alleged onset date. At step two of the process the ALJ found that Ms. Boykins suffers from the following severe impairments: (1) bipolar disorder; (2) anxiety disorder; and (3) post-traumatic stress disorder. He concluded that her physical impairments did not rise to the level of severe. At step three of the evaluation the ALJ determined that Ms. Boykins does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. In completing the step three analysis, the ALJ considered whether Ms. Boykins' impairments met or equaled the impairments described in sections 12.04, 12.06, and 12.07.

Before proceeding to step four, the ALJ determined that Ms. Boykins had the residual functional capacity (RFC) to perform work-related activities under the following guidelines: she is able to understand, remember and carry out routine and repetitive, but not complex, instructions and tasks; she can tolerate occasional public interaction; she cannot tolerate frequent changes in work setting or duties; and she must avoid climbing ladders and scaffolds, exposure to unprotected heights and open machinery, driving, and exposure to concentrated fumes, odors, and temperature extremes.

In arriving at his RFC, the ALJ considered the medical evidence and opinions in the record as well as testimony from the hearing with Ms. Boykins. The ALJ determined that because of inconsistent complaints as compared to the record, Ms. Boykins' statements regarding the "intensity, persistence and limiting effects of these symptoms are not fully persuasive to the extent they are inconsistent with the above residual functional capacity assessment." R. 20. The

ALJ noted that in terms of Ms. Boykins' "alleged physical symptoms and limitations, the treatment records do not support her testimony with regard to the frequency or severity" of her complaints. R. 21–22.

At step four the ALJ determined that Ms. Boykins could not perform her past relevant work as a residential counselor, drug and alcohol counselor, certified nursing assistant, or corrections officer. Finally, at step five, based on the testimony of a vocational expert, the ALJ found that based on Ms. Boykins' age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform. As such, the ALJ determined that Ms. Boykins was not disabled within the meaning of the Social Security Act from October 29, 2007 through August 16, 2010.

**Conclusions**

Ms. Boykins argues that the ALJ erred by failing (1) to develop the record fully, specifically with regard to whether Ms. Boykins suffers from a somatoform disorder, (2) to give proper weight to the medical source opinions, and (3) to link his credibility findings to substantial evidence.

<u>Development of the Record</u>

Ms. Boykins' first argument is that the ALJ failed to adequately develop the record concerning her somatoform disorder. "It is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). "However, unlike the typical judicial proceeding, a social security disability hearing is nonadversarial, with the ALJ responsible in every case 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" *Id.* (quoting *Henrie*

*v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993); 20 C.F.R. § 404.944 (requiring the ALJ to "look[ ] fully into the issues").

In *Hawkins v. Chater* the Tenth Circuit examined "what quantum of evidence a claimant must establish of a disabling impairment or combination of impairments before the ALJ will be required to look further." 113 F.3d at 1166. The court identified three situations where an ALJ is often required to order a consultative examination: (1) where there is a direct conflict in the medical evidence requiring resolution; (2) where the medical evidence in the record is inconclusive; and (3) where additional tests are required to explain a diagnosis already contained in the record. *Id.*

Ms. Boykins was hospitalized for eight days in 2008 and ten days in 2009 because of severe abdominal pain. Despite a colonoscopy and exploratory laparotomy, doctors were not able to make a conclusive diagnosis. During her February 2009 hospitalization, Dr. Nix performed a consultative psychiatric examination and opined that somatoform disorder was consistent with her symptoms and lack of objective medical findings. He also noted that Ms. Boykins has a significant history of abuse, and somatoform disorder is often correlated with abuse. No further information was provided about the possibility of somatoform disorder, and no other physicians, including consultative physicians, opined on this possible diagnosis.

Ms. Boykins did not list somatoform disorder on her application for benefits, and it was not discussed during the administrative hearing. It was not until after the hearing in a subsequent briefing that her lawyer first raised the issue. In that brief, her lawyer stated, "[b]ased on the claimant's history of abuse, her complaints regarding her headaches, past reports of anorexia and current abdominal complaints likely indicate a somatic component to the claimant's mental illness. In the event that the earlier EOD cannot be determined on the existing record, I request

additional time to develop the somatic issue and/or a supplemental hearing with ME testimony to address the issue of onset." R. 214.  In his decision, the ALJ denied this request because "the record as it is currently constituted is sufficient to support a decision." R. 14.

I disagree.  Based on the information available, I conclude that the ALJ had a duty to develop the record on the possibility of a somatoform disorder more fully.  It is frustrating that Ms. Boykins and her attorney did not address the issue before or during the administrative hearing so that it could have been dealt with at that time.  Although tardy, they did bring the issue to the ALJ's attention in the supplemental brief.  There is very little in the record about the somatoform disorder, but there is the glaring issue of serious undiagnosed abdominal pain.  The ALJ's opinion does not say much about the abdominal pain, noting only that Ms. Boykins experienced abdominal pain on a daily basis for at least an hour a day and that adhering to a gluten free diet has helped some.  There is no mention that she was hospitalized at length twice for her abdominal pain, and that several invasive tests were performed in an effort to diagnose the pain.  This is potentially a significant medical issue.  Further, the ALJ's opinion does not mention the possibility of somatoform disorder.

In this situation, the medical evidence was inconclusive about the cause of Ms. Boykins' abdominal pain.  Therefore, under *Chater,* the ALJ had a duty to develop the record on this issue more fully.  I understand that a definitive diagnosis in this case may not be possible, but exploring the possibility of somatoform disorder is necessary to evaluate all of Ms. Boykins' alleged impairments fairly.

<u>Weight of Medical Source Opinions</u>

Ms. Boykins also argues that the ALJ failed to follow regulations and case law when he accorded Dr. Torness-Smith's opinion little weight.  "An ALJ must evaluate every medical

11

opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)). Treating source opinions are generally entitled to controlling weight. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson*, 366 F.3d at 1084.

> When determining what weight to give a treating physician's opinion,
>
> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins*, 350 F.3d at 1300) (internal citations omitted). An ALJ must give specific reasons for the weight assigned to a treating physician's opinion so that subsequent reviewers can determine the weight assigned and the reason for that weight. *Id.* If an ALJ rejects a treating physician's opinion completely, he must then "give specific, legitimate reasons for doing so." *Id.* (quoting *Watkins*, 350 F.3d at 1301).

In his opinion, the ALJ explained that Dr. Torres-Smith's opinion was not entitled to controlling weight because

> it appears to be based primarily on the claimant's subjective complaints, it is based, at least in part, on physical complaints that are outside the psychologist's area of expertise, and it is not consistent with the psychologist's treatment notes, which document several reports of improvement and stability with medication. The opinion is also unpersuasive because it is inconsistent with treatment records from another source, which show that in November 2007 the claimant reported improved mood and concentration, less panic and insomnia, and fewer migraines.

R. 20-21. This is a careful, detailed explanation that adequately explains why Dr. Torres-Smith's opinion was not accorded more weight.

<u>Credibility Determination</u>

Ms. Boykins argues that the ALJ failed to base his findings regarding Ms. Boykins' credibility in substantial evidence. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (internal citations and quotations omitted). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted). I agree with Ms. Boykins and the Seventh Circuit that statements such as "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully persuasive to the extent they are inconsistent with the above residual functioning capacity assessment," are not helpful when reviewing an ALJ's determination of credibility. *Bjornson v. Astrue,* 671 F.3d 640 (7th Cir. 2012). However, in this case, after that statement, the ALJ went through the record and described in detail many inconsistencies between Ms. Boykins' description of her symptoms and the medical record. R. 20. This is sufficient to support the ALJ's finding that Ms. Boykins is not entirely credible.

**Order**

The decision of the ALJ is reversed. The case is remanded to the Commissioner for further proceedings before the ALJ, particularly, development of the record pertaining to Ms.

Boykins' abdominal pain and the diagnosis of a somatoform disorder.

DATED this 9th day of September, 2013.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge